UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**FRANCIS BOLOGNA, ET AL.**                                  **CIVIL ACTION**

**VERSUS**                                                   **NO. 15-2329**

**EAMON MARNELL, ET AL.**                                    **SECTION "B"(4)**

ORDER AND REASONS

I.  NATURE OF MOTION AND RELIEF SOUGHT

Before the Court are Defendant's, Old Republic Insurance Company ("Old Republic"), "Motion for Summary Judgment" (Rec. Doc. 26), Plaintiffs', Francis O. Bologna and Advanced Technological Training, LLC ("ATT"), opposition thereto (Rec. Doc. 27), and Defendant's corresponding reply (Rec. Doc. 41). Also before the Court are Plaintiffs' "Motion for Partial Summary Judgment" (Rec. Doc. 30), Defendant's opposition (Rec. Doc. 36), and Plaintiffs' reply (Rec. Doc. 40). Defendant seeks entry of summary judgment and final judgment in its favor on the grounds that there is no genuine dispute as to any material fact as to Defendant's lack of insurance coverage, while Plaintiffs seek entry of partial summary judgment in their favor as to the converse. As stated more fully herein, **IT IS ORDERED** that Defendant's Motion is **DENIED** and Plaintiffs' Motion is **GRANTED.**

II.  FACTS AND PROCEDURAL HISTORY

The undisputed facts are as follows. Bologna is the sole owner and member of ATT, the owner of a 1973 Piper Challenger, PA-28-

180 ("the Aircraft"). (Rec. Doc. 1-1 at 2). ATT insured the Aircraft with Old Republic under an aviation insurance policy ("the Policy") with an insured value of $80,000, effective from June 1, 2014 to June 1, 2015. (Rec. Doc. 1-1 at 2). In the "EXCLUSIONS" section of the Policy, Exclusion No. (2) states:

> This policy does not apply:
> . . .
> 2. To any Insured while the aircraft is in flight
> (a) If piloted by other than the pilot or pilots designated in the Declarations;
> (b) If piloted by a pilot not properly certificated, qualified and rated under the current applicable Federal Aviation Regulations for the operation involved, whether or not said pilot is designated in the Declarations[.]

(Rec. Doc. 26-2 at 33). As stated in the "DECLARATIONS" section, "Pilots" is defined as follows:

> When in flight, the aircraft will be piloted only by the following pilots, provided he/she has a valid pilot's certificate and a valid medical certificate, each appropriate to the flight and the aircraft:
>
> FRANCIS BOLOGNA;
>
> ANY PRIVATE, COMMERCIAL OR ATP PILOT PROPERLY CERTIFIED BY THE FAA HAVING A MINIMUM OF 300 TOTAL LOGGED FLYING HOURS, INCLUDING NOT LESS THAN 10 HOURS IN THE SAME MAKE AND MODEL AIRCRAFT INSURED HEREIN.

(Rec. Doc. 26-2 at 10). The Policy contains Liability Coverages under Coverages A through D,[1] Expenses for Medical Services

---

[1] Specifically, Coverage A covers Bodily Injury Liability Excluding Passengers, Coverage B covers Property Damage Liability, Coverage C covers Passenger Bodily

Coverage under Coverage E, and Physical Damage Coverages under Coverages F and G. (Rec. Doc. 26-2 at 31). Coverage F provides "All Risk Basis" coverage "[t]o pay for any physical damage to or loss of the aircraft, including disappearance of the aircraft." (Rec. Doc. 26-2 at 31).[2]

On or about September 13, 2014, Bologna leased the Aircraft to Eamonn Marnell under an Aircraft Dry Lease Agreement. (Rec. Doc. 1-1 at 2). The next day, Marnell crashed the Aircraft in St. Petersburg, Florida. (Rec. Doc. 1-1 at 3; Rec. Doc. 26-4 at 2; Rec. Doc. 27-1 at 2). At the time of the crash, Marnell had less than 300 total logged flying hours. (Rec. Doc. 1-1 at 7).[3] The other passenger in the Aircraft, Grant Jordan, did not have a license issued by the Federal Aviation Administration or other credentials to legally operate the Aircraft. (Rec. Doc. 1-1 at 4). Plaintiffs submitted proof of loss to Old Republic, but Old Republic did not pay the first party claim for physical damage to the Aircraft. (Rec. Doc. 1-1 at 4). Plaintiffs' seek to recover pursuant to the All Risk Basis Physical Damage Coverage under Coverage F of the Policy. (Rec. Doc. 27 at 1).

---

Injury Liability, and Coverage D covers Single Limit Bodily Injury and Property Damage Liability. (Rec. Doc. 26-2 at 31).
[2] Coverage G covers All Risk Basis Not in Motion. (Rec. Doc. 26-2 at 31).
[3] It should be noted that Plaintiffs neither admitted nor denied this fact as listed in Defendant's "Statement of Undisputed Material Facts in Support of Motion for Summary Judgment." (*See* Rec. Doc. 26-4 at 2; Rec. Doc. 27-1 at 2). Pursuant to L.R. 56.2 and in light of Plaintiffs' original complaint, this fact is deemed admitted. Plaintiffs deny, however, that Marnell did not have ten logged flying hours in the same make and model as the Aircraft. (Rec. Doc. 26-4 at 2; Rec. Doc. 27-1 at 2).

On June 5, 2015, Plaintiffs filed the instant suit in Civil District Court for the Parish of Orleans, State of Louisiana. (Rec. Doc. 1-1 at 1). In their original complaint, Plaintiffs include allegations of negligence and violation of the Louisiana Racketeering Act, La. Rev. Stat. § 15:1301 et seq., against Defendants Marnell and Jordan; allegations of breach of contract against Defendants Marnell and Old Republic; an allegation of fraud against Defendant Marnell; and an allegation of breach of duty of good faith against Defendant Old Republic. (Rec. Doc. 1-1 at 4-8). On June 26, 2015, Defendant Old Republic timely removed the instant action, maintaining that there was federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and because all parties are diverse as Plaintiffs are citizens of Louisiana, Defendants Marnell and Jordan are citizens of Ireland, and Defendant Old Republic is a citizen of Pennsylvania and Illinois. (Rec. Doc. 1).

**III. CONTENTIONS OF DEFENDANT**

Defendant argues that the Policy is clear that all coverage is excluded under Exclusion No. (2) when the Aircraft is flown by an individual not defined as a pilot in the declarations section, which is explicitly incorporated therein. Defendant further maintains that Marnell was not a pilot as defined in the declarations section of the Policy, as proven through Plaintiffs' own complaint, as well as other discovery. As such, Defendant

4

concludes that all coverage – including physical damage coverage under Coverage F – is barred by Exclusion No. (2) under the circumstances. Finally, Defendant cites other cases concerning aircraft insurance policies with related pilot exclusions in which coverage was denied.

## IV. CONTENTIONS OF PLAINTIFFS

Plaintiffs argue that physical damage coverage under Coverage F is not excluded, as it provides "all-risk" coverage and Exclusion No. (2) does not explicitly exclude such coverage by its terms. Specifically, Plaintiffs point out that Exclusion No. (2) refers only to coverage of "any Insured," a term not defined with respect to Coverage F in the Policy. Further, Plaintiffs aver that Exclusion No. (2) is inapplicable to Coverage F, as it does not specifically state its application thereto, as does one other exclusion in the Policy – Exclusion No. (8). Lastly, Plaintiffs contend that the cases cited by Defendant are irrelevant, as those cases did not concern first party property damage disputes.

## V. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would

allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998).

The moving party bears the initial responsibility of informing the district court of the basis for its motion. *Celotex*, 477 U.S. at 323. The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P. 56). If and when the movant carries this burden, the nonmovant must then go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. . . . Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for

that party' is a full trial on the merits warranted." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

**VI. DISCUSSION**

"Interpretation of an insurance policy is a question of law." *Principal Health Care of La., Inc. v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994) (citing *F.D.I.C. v. Barham*, 995 F.2d 600 (5th Cir. 1993)). Accordingly, "[a]s a federal court sitting in diversity, we apply Louisiana rules of policy interpretation in this case." *Id.* at 242-43.[4] "Louisiana law is clear that the interpretation of insurance policy provisions is to be governed by the rules pertaining to the interpretation of other types of contracts." *Principal Health*, 38 F.3d at 243 (citing *Battig v. Hartford Acc. & Indem. Co.*, 608 F.2d 119 (5th Cir. 1979)).

---

[4] As Louisiana is the forum state, its conflict of law rules apply. *See Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 230 (5th Cir. 2005) ("When federal jurisdiction is based on diversity of citizenship, we apply the conflict of law rules of the forum state[.]"). Pursuant to those rules, Louisiana law governs claims related to the Policy because it was delivered in Louisiana for the purpose of insuring the Aircraft, which was located in Louisiana and owned by ATT, a Louisiana company owned solely by a Louisiana citizen. *See Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) ("Louisiana choice of law rules dictate, that in [an] action involving the interpretation of insurance policies issued in Louisiana, Louisiana substantive law governs [the] decision.").

**A. Louisiana Contracts Principles Governing Insurance Policies**

Under Louisiana law, "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "The words of a contract must be given their generally prevailing meaning[,]" La. Civ. Code art. 2047, and "[w]hen [they] are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. However, "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ. Code art. 2048. Likewise, "[a] provision susceptible of different meanings must be interpreted with a meaning that renders it effective[,]" La. Civ. Code art. 2049, and "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. Finally, "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." La. Civ. Code art. 2056.

Here, interpreting the words of the Policy in light of their generally prevailing meanings, while remaining mindful of the Policy as a whole in assessing its phrases, this Court finds that the Policy does not unambiguously include or exclude physical damage coverage. Particularly, Exclusion No. (2) in the Policy states that it "does not apply . . . [t]o *any Insured* while the

aircraft is in flight . . . [i]f piloted by other than the pilot or pilots designated in the Declarations[.]" (Rec. Doc. 26-2 at 33) (emphasis added). In the Policy's "DECLARATIONS" section, it is clear that an individual is not a pilot under the terms of the Policy so as to trigger coverage if he or she is neither Francis M. Bologna nor a pilot certified as having a minimum of 300 total logged flying hours. (Rec. Doc. 26-2 at 10).

Because Plaintiffs allege in their complaint that Marnell did not have 300 total logged hours, did not object to Defendants' statement of the same, and did not dispute that Marnell crashed the Aircraft,[5] it is clear that Marnell was operating the Aircraft but was not a pilot so as to trigger coverage of "any Insured." Nevertheless, the exclusion does not include language that indicates similar consequences with respect to coverage of loss or damage, *e.g.*, the coverage afforded under Coverage F and at issue presently. On the other hand, Exclusion No.(2) does not expressly limit its application to Liability and/or Medical Services Coverage as do other exclusions in the Policy. (*See* Rec. doc. 26-2 at 33-34).

All the same, exclusion of physical damage coverage based on the plane being flown by an individual not defined by the Policy as a pilot would, at the very least, lead to ambiguity. Because

---

[5] (Rec. Doc. 1-1 at 7; Rec. Doc. 26-4 at 2; Rec. Doc. 27-1 at 2).

9

physical damage coverage applies "[t]o pay for . . . loss of the aircraft, including disappearance of the aircraft[,]" it appears to apply in the case of theft. (Rec. Doc. 26-2 at 31). Limiting coverage to theft only if occasioned by a pilot as defined in the Policy would be absurd, highlighting the existence of ambiguity. Such an ambiguity must be interpreted against the party who furnished its text, such that Defendant cannot prevail on its motion. *See* La. Civ. Code art. 2056. This does not connote automatic success on Plaintiffs' motion, however, and this Court must go beyond Louisiana's general contract laws and evaluate more specific precedent.

### B. "All Risk" Insurance Policies

Principles relevant to the type of insurance coverage at issue favor a finding of coverage. Physical damage to the Aircraft is covered under the Policy's Coverage F, which affords an "All Risk Basis" for coverage. Under Louisiana law courts have held that under "an 'all risk' policy, . . . all risks are covered unless clearly and specifically excluded." *Cochran v. Travelers Ins. Co.*, 606 So. 2d 22, 24 (La. Ct. App. 1992). This is because "[a] policy of insurance insuring against 'all risks' creates a special type of coverage that extends to risks not usually covered under other insurance;" thus, "recovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly

10

excluding the loss from coverage." *U.S. Indus., Inc. v. Aetna Cas. & Sur. Co.*, 690 F.2d 459, 461 (5th Cir. 1982).

"The insurer has the burden of proving that a loss comes within a policy exclusion." *La. Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250, 1252 (La. 1993) (citations omitted). Further, "[a]ny ambiguity in an insurance policy is construed against the insurer" and "[p]olicy ambiguities are construed in favor of coverage." *Id.* (citations omitted). Consequently, if an exclusion is susceptible of more than one reasonable interpretation, that exclusion "must be construed against the insurance company and in favor of the reasonable construction that affords coverage." *RPM Pizza, Inc. v. Auto. Cas. Ins. Co.*, 601 So. 2d 1366, 1369 (La. 1992).

Here, the Policy does not expressly exclude the loss from coverage and is, at the very least, ambiguous so as to warrant construing it in favor of coverage. In the instant Policy, the "All Risk Basis" for Physical Damage Coverage under Coverage F states that it is "[t]o pay for *any physical damage* to *or loss of the aircraft*, including disappearance of the aircraft." (Rec. Doc. 26-2 at 31) (emphasis added). Thus, all risks that result in physical damage or loss are covered unless clearly and specifically excluded or if they are the result of misconduct or fraud. Exclusion No. (2) expressly states that the Policy (which includes Coverage F) does not apply "[t]o any Insured" while the Aircraft

11

is in flight if piloted by someone other than the defined pilots. (Rec. Doc. 26-2 at 33). Accordingly, Exclusion No. (2) does not clearly and specifically state that the Policy is inapplicable to claims of damage or loss when the Aircraft is flown by a "non-pilot," so as to expressly exclude the instant loss from coverage. This is in contrast to other exclusions that clearly exclude coverage for such claims. (*See, e.g.*, Rec. Doc. 26-2 at 33) (Exclusion No. (4) states that the Policy does not apply "[t]o any loss or damage due to radioactive contamination."). Consequently, Exclusion No. (2) is not an express exclusion of the loss from coverage and is ambiguous at best.

Also of note, Exclusion No. (2) bars application of the Policy to any "Insured," a term that was not defined with respect to Coverages F and G. (Rec. Doc. 27 at 5). Specifically, the "DEFINITIONS" section of the Policy reads, in relevant part: "When appearing in this policy: . . . [t]he unqualified word 'Insured' wherever used in this Policy with respect to Coverages A, B, C and D, includes not only the Named Insured [ATT] but also any person while using or riding in the aircraft" meeting certain criteria set forth therein. (Rec. Doc. 26-2 at 36). Though the Named Insured is defined with respect to Coverages F and G, this is further proof that Exclusion No. (2), and its reference only to "any Insured," bars claims concerning persons – albeit natural or juridical – for liability coverage for bodily injury, property damage, or medical

12

expenses. Those claims relevant to an Insured are not the same as those related to the Aircraft, for physical damage or loss.

On the other hand, the Court does not agree with Plaintiffs' argument that Exclusion No. (2) creates "illusory coverage" if determined to be applicable to Coverage F. (Rec. Doc. 30-1 at 10) ("If insurers like Old Republic are allowed to deceptively bootstrap part of the Declarations into an exclusion which is not clearly expressed to apply to All-risk coverage for physical damage the result will be an illusion of 'All-risk' coverage."). Particularly, Plaintiffs argue that Exclusion No. (2) does not apply to Coverages F and G because Exclusion No. (8) is the only exclusion specifically referencing Coverages F and G, such that the Policy is clear that it is the only applicable exclusion. (Rec. Doc. 27 at 4-5; Rec. Doc. 30-1 at 6). If such an argument were to prevail, Exclusion Nos. (1) through (4) would be completely inapplicable to the Policy. Specifically, while Exclusion Nos. (5) through (8) apply to specific Coverages,[6] the first four exclusions do not. If this Court determines that only Exclusion No. (8) applies to Coverages F and G because it is the only exclusion to expressly reference them, Exclusions No. (1) through (4) would be rendered invalid, as Coverages A through E are likewise referenced

---

[6] Exclusion No. (5) applies to "Coverages A, B, C, D and E[,]" Exclusion No. (6) applies to "Coverages A, C and D[,]" Exclusion No. (7) applies to "Coverages B and D[,]" and Exclusion No. (8) applies to "Coverages F and G[.]" (Rec. Doc. 26-2 at 41-42).

13

explicitly in Exclusions No. (5) through (7). We must interpret the exclusions with a meaning that renders them effective. *See* La. Civ. Code art. 2049.

**C. First Party Physical Damage Coverage Disputes**

Finally, though the cases cited by both Plaintiffs and Defendant are distinguishable from the facts at hand, they are all consistent with a finding of ambiguity and consequently, coverage. The landmark case on the issue is *Benton Casing Services, Inc. v. Avemco Ins. Co.*, 379 So. 2d 225 (La. 1979), a dispute for physical damage coverage of an airplane arising out of similar facts. In *Benton*, the insured sought "to recover for the loss of an airplane[,]" but was "denied coverage on the ground that the pilot operating the aircraft at the time of the crash was not named by the policy as a pilot during whose operation the policy applied." *Id.* at 226. Specifically, the insurer denied coverage based on a provision in the declarations section of the insurance policy which defined "PILOTS" and stated that the "policy applie[d] when the aircraft [was] in flight, only while being operated by one of the [defined] pilots[.]" *Id.* at 227. The Louisiana Supreme Court, on rehearing, determined that the declaration was not an exclusion, but a representation, such that coverage should be afforded. *Id.* at 236. The Fifth Circuit has succinctly described the three principal factors relied on in *Benton* that courts should apply for assessing whether a named pilot endorsement is an exclusion or

14

representation. The factors include "(1) where the provision appear[s] in the policy; (2) whether the endorsement, if read as an exclusion, would render the policy ambiguous; [and] (3) the past practice of the parties to the policy." *Graham v. Milky Way Barge, Inc.*, 824 F.2d 376, 383 (5th Cir. 1987).

Applying *Benton*, this case is distinguishable from the outset because, although the controverted exclusion appears in full in the declarations section of the Policy, it is also referenced in the exclusions section where "the exclusions specifically refer[] to it." *Bridgefield Cas. Ins. Co. v. River Oaks Mgmt., Inc.*, 590 F. App'x 308, 315 (5th Cir. 2014) (quoting *Compass Ins. Co. v. Vanguard Ins. Co.*, 649 F.2d 331, 335 (5th Cir. 1981)). Nonetheless, to read Exclusion No. (2) as applicable to Coverage F would render the Policy ambiguous because excluding physical damage coverage based on the plane being flown by a "non-Pilot" as defined by the Policy would seemingly contradict the stated purpose of such coverage. Because physical damage coverage under Coverage F applies "[t]o pay for . . . loss of the aircraft, including disappearance of the aircraft[,]" it seems to apply in the case of theft. (Rec. Doc. 26-2 at 31). Limiting coverage to theft only if occasioned by a "pilot" as defined in the Policy would be absurd, so as to render it ambiguous. *See Compass*, 649 F.2d at 335 (In *Benton*, "if the endorsement were considered an exclusion, it would have rendered the policy ambiguous because it was not on its face

15

limited to particular types of coverage and thus would have contradicted the policy's coverage of loss when the plane was flown by a thief."). Lastly, the parties have not made this Court aware of any past practices that might influence a decision.

The cases cited by Defendant are less instructive. In *Compass*, the first case cited by Defendant, the Fifth Circuit held that a claim for coverage under an insurance policy for an aircraft was excluded because an unapproved pilot used the aircraft. *See id.* at 332. In that case, plaintiff sought in-flight, or "M-8" coverage, for loss of an airplane. *Id.* Within the insurance policy, however, it clearly stated in the "EXCLUSIONS" section: "This insurance does not apply: . . . [u]nder coverage M-8 . . . [t]o aircraft operated by other than the pilot or pilots set forth in Item 4 of the Schedule." *Id.* at 333. The pilot at the time of the airplane's crash was not a pilot as set forth in the policy. *Id.* at 332.

The circumstances at hand are remarkably different. First, though not conclusive of success, the instant Policy did not specifically qualify the application of Exclusion No. (2) to Coverage F, as did the policy in *Compass* with respect to M-8 coverage.[7] Second, the policy in *Compass* is clear that "insurance

---

[7] Defendant failed to include the qualifying portion of the exclusion when quoting it in its motion, or to cite to the proper page in the case for reference. (*See* Rec. Doc. 26-1 at 7) (quoting *Compass*, 649 F.2d at 333) ("This insurance does not apply: . . . [t]o aircraft operated by other than the pilot or pilots set forth in Item 4 of the Schedule."). Though this Court will treat this selective quotation as a mere oversight, it should be noted that deceptive recitation of law is frowned upon and not in line with the interests of justice.

does not apply . . . *[t]o aircraft*" if flown by a pilot that does not meet the standards defined within, so as to bar recovery for physical damage or loss of the airplane – but not necessarily liability or medical services coverage to persons – under those circumstances. To the contrary, the instant Policy states that it "does not apply . . . *[t]o any Insured* while the aircraft is in flight" if flown by a "non-pilot" under the Policy. Thus, while it is clear that coverage is barred as to claims concerning those defined under the Policy as Insureds (*e.g.*, for bodily injury for pilot and passengers, property damage, and medical services), it is not clear that coverage is similarly excluded as to claims associated with the Aircraft (*e.g.*, for physical damage or loss). This is in contrast to other exclusions which explicitly state their application to claims connected to the Aircraft.[8]

The second case cited by Defendant is less informative, as it concerned claims for liability coverage in relation to the death of passengers killed in the crash of an airplane. *See U.S. Fire Ins. Co. v. W. Monroe Charter Serv., Inc.*, 504 So. 2d 93, 95 (La. Ct. App. 1987), *writ denied*, 505 So. 2d 1141 (La. 1987). In that case, the court held that the aircraft insurance policy provided no liability coverage as a result of the pilot failing to meet the

---

[8] (*See* Rec. Doc. 26-2 at 23) ("This policy does not cover claims caused by . . . ."); (Rec. Doc. 26-2 at 33) ("This policy does not apply . . . [t]o any loss or damage due to . . . ."); (Rec. Doc. 26-2 at 33-34) ("This policy does not apply . . . [t]o loss or damage due to . . . ."); (Rec. Doc. 26-2 at 33-34) (This policy does not apply . . . [to] damage to turbine engines . . . .").

17

defined pilot standards. *Id.* There, the policy stated: "The policy under Part Three, Liability to Others, provides: . . . What is Not Covered. We do not cover any . . . [b]odily injury or property damage unless the requirements of the Coverage Identification Page regarding Pilots (Item 9) and Use (Item 10) are met." *Id.* at 99. In Item 9 of the Coverage Identification Page, the policy defines pilot and also states that "[t]here is no coverage under the policy if the pilot does not meet these requirements." *Id.* This statement is reiterated in the General Provisions and Conditions section. *Id.*

Here, there is no question that Exclusion No. (2) bars liability coverage for bodily injury or property damage, just as the policy in *U.S. Fire* did. However, as in *U.S. Fire*, the Policy does not expressly exclude coverage for physical damage to or loss of the aircraft. Consequently, the case is of little value, except to reestablish what is already clear from the Policy itself. Furthermore, even if the facts of *U.S. Fire* involved a claim for physical damages or loss of an aircraft, the policy in that case was still clearer in scope, as it stated that there would be "no coverage under the policy if the pilot [did] not meet the[] requirements." *Id.* No such language appears in the instant Policy.

Accordingly, the language of the Policy seems to afford coverage for physical damage to or loss of the Aircraft under Coverage F as Exclusion No. (2) appears inapplicable. Although

18

this Court is wary to conclusively state that this was the intent of the parties, it notes that Defendant had the burden of proving that the loss fell within Exclusion No. (2) and failed to do so. Therefore, there is no genuine dispute as to any material fact that the Policy and specifically, Exclusion No. (2), is at the very least ambiguous. *See Lindsey*, 16 F.3d at 618. The ambiguity must be construed against Defendant and in favor of coverage. *See La. Maint. Servs.*, 616 So. 2d at 1252. Though the exclusion may be susceptible of other interpretations, this Court holds that its interpretation against Defendant and in favor of coverage is reasonable. *See RPM Pizza*, 601 So. 2d at 1369 (An exclusion susceptible of more than one reasonable interpretation "must be construed against the insurance company and in favor of the reasonable construction that affords coverage.").

## VII. CONCLUSION

In light of the foregoing, **IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED** and Plaintiff's Motion for Partial Summary Judgment is **GRANTED.**

New Orleans, Louisiana, this 18th day of July, 2016.

_____
SENIOR UNITED STATES DISTRICT JUDGE